McQUADE v. TRENTON.

ERROR TO THE COURT OF ERRORS AND APPEALS OF THE STATE
OF NEW JERSEY.

No. 125. Argued January 12, 1899. — Decided January 30, 1899.

A decision by a state court of a Federal question will not sustain the juris-
diction of this court if another question, not Federal, was also raised and
decided against the plaintiff in error, and the decision thereof is suffi-
cient, notwithstanding the Federal question, to sustain the judgment;
and much more is this the case where no Federal question is shown to
have been decided, and the case might have been, as this case probably
was, disposed of upon non-Federal grounds.

THIS was a bill in equity filed in the Court of Chancery of the
State of New Jersey by the inhabitants of the city of Trenton
against John McQuade, to enjoin him from interfering with the
relaying of a certain pavement, and the resetting of the curb
and gutter in front of his premises, in the city of Trenton.

The bill averred, in substance, that a change of grade on
the street in front of the premises of the defendant was made
by a city ordinance, at the special request of the Pennsylvania
Railroad Company, upon an agreement by the latter to make
the changes, to carry off all the surface water diverted or
changed by the alteration, and to indemnify the city; but
that the defendant McQuade, who owned a lot upon the street
in question, not only notified the workmen to desist from
changing the grade, but forcibly interfered with their work
by throwing hot and cold water on the men engaged in such
work, and thus tried to prevent its being carried on; and that
after the pavement had been relaid in front of his property,
he tore it up and rendered it nearly impassable for pedestrians
by digging a hole in the sidewalk in front of his premises and
keeping the same filled with water.

In his answer, defendant denied that the railroad company
had provided means to carry off the surface water, and al-
leged that the provisions made were utterly inadequate, and
that his property had been damaged by the overflow of water

into his cellar. He further averred that the change of grade authorized by the city ordinance was not a proper change of grade, but that the alteration related to the construction of approaches to an elevated bridge, and was a matter over which the common council could not exercise any legal authority whatsoever; that by the attempted alteration of the grades, the surface water, instead of passing through the street, was caused to accumulate immediately in front of the defendant's property, and was likely to overflow the sidewalk and into the defendant's cellar; that if the sidewalk in front of defendant's property were raised to the grade mentioned in the ordinance, the cellar windows of his house would be practically closed up and his free access to the street greatly impaired; that the alteration of the grade was a work carried on at the expense of and for the sole benefit of the railroad company; that such company had no authority under the law to do the work and thereby damage defendant's property without first making compensation for the damage he would sustain by reason of such work, and that he had a right to prevent the completion of the work until he should have received full compensation for all damages he would sustain by such work, and hence that complainants were not entitled to the relief prayed for. Further answering, he insisted that under the constitution of the State he had a right to free access to the street from his property and to the free admission of light and air; and that no alteration in the grade of the street could be lawfully made until a proper method of procedure should have been prescribed by the legislature for the exercise of the power of eminent domain, "whereby this defendant may receive proper and adequate compensation for the damage that will result to him by said alteration of grades and exclusion of light and air."

The case was heard upon the pleadings and proofs, and a decree rendered that the defendant be perpetually enjoined from interfering with the completion of the sidewalk and curbing, and from removing or interfering with the pavement, sidewalk or curbing after the same shall have been completed.

In his opinion the Vice Chancellor put the case upon the grounds that the defendant had no right to take the law into his own hands and bid defiance to the city authorities; that the city being liable for damages sustained, because of the want of repaired streets, and having undertaken to repair them according to the grade which had been prescribed, the court was justified in enjoining defendant from any interference; that the only question at issue was one with respect to the damages to which McQuade was entitled; that he might have ascertained these before the city or railroad company took any steps, but that he allowed the company to go on and make all the changes necessary without taking direct proceedings to compel them to ascertain the damages and compensate him, and that he has still an ample remedy for a redress of his grievances without interfering with the right of the public to the use of the street in front of his dwelling.

From this decree McQuade appealed to the Court of Errors and Appeals upon the ground that under such decree the complainants were permitted to take and damage his property for public use without compensation, because no procedure for taking and injuring his property in the manner set forth had been prescribed by the legislature, and "because the decree is in sundry other respects contrary to the Constitution of the United States and to the law of the land." The petition of appeal was dismissed by the Court of Errors and Appeals and the case remanded for an execution of the decree. No written opinion was delivered.

*Mr. David McClure* for plaintiff in error.

No appearance for defendant in error.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

The principal contention of the plaintiff in error (the defendant below) is that, as he had never been compensated in

damages for the injury to his property by altering the grade of the street in front of his lot, he had a right to abate the nuisance caused by the proposed changes, and that in the refusal of the state court to recognize this principle he had been deprived of his property without due process of law within the meaning of the Fourteenth Amendment to the Federal Constitution. But no such question was raised in the pleadings, unless the allegation of the answer that the plaintiffs had no right to make the alterations in question without first compensating defendant for his damages, be treated as equivalent.to an allegation that his property had been taken without due process of law. The right of the defendant to damages was, however, assumed in the opinion of the Vice Chancellor, who disposed of the answer by saying that the defendant had mistaken his remedy, and must resort to another proceeding against the city for his damages. This was beyond all doubt a ruling broad enough to support the decree regardless of any Federal question that possibly might have been raised from the allegation of the answer. In his petition for an appeal defendant repeated his allegation that his property had been damaged without compensation, and averred generally that the decree was contrary to the Constitution of the United States, but made no specific allegation of any conflict therewith. As the Court of Errors and Appeals delivered no opinion, it is impossible to state definitely upon what ground the decree of the Vice Chancellor was affirmed. The presumption is that it was satisfied with the opinion of the court below, and affirmed the decree for reasons stated in the opinion of the Vice Chancellor; but however this may be, it is quite evident that a Federal question was not necessarily involved in the case, and hence that this court has no jurisdiction. *Kaukauna Water Power Co.* v. *Green Bay &c. Canal Co.*, 142 U. S. 254; *Chicago Life Ins. Co.* v. *Needles*, 113 U. S. 574; *Eureka Lake &c. Canal Co.* v. *Yuba County*, 116 U. S. 410.

We have repeatedly held that even the decision by the state court of a Federal question will not sustain the jurisdiction of this court, if another question not Federal were also raised and decided against the plaintiff in error, and the decision thereof

be sufficient, notwithstanding the Federal question, to sustain the judgment. Much more is this the case where no Federal question is shown to have been decided, and the case might have been, and probably was, disposed of upon non-Federal grounds. *Harrison* v. *Morton*, 171 U. S. 38; *Bacon* v. *Texas*, 163 U. S. 207, and cases cited.

The writ of error in this case must therefore be

*Dismissed.*